UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **BELUGA INC** : <br> : <br> : <br> : <br> **Plaintiff,** : <br> : <br> : <br> v. : <br> : <br> **US CUSTOMS AND BORDER** : <br> **PROTECTION AND** : <br> **RODNEY S. SCOTT, in his official** : <br> capacity as **COMMISSIONER,** : <br> **U.S. CUSTOMS & BORDER PROTECTION** : <br> : <br> **Defendants.** : <br> : | Court No. 26-01212 |

## COMPLAINT

Plaintiff, Beluga Inc, by and through its attorneys, hereby brings this action and alleges the following:

1. Plaintiff is an importer of merchandise who challenges the assessment of IEEPA duties.

2. In February 2025, and thereafter, the President issued a series of executive orders to invoke the International Emergency Economic Powers Act ("IEEPA") as authority to impose new tariffs ("IEEPA Tariffs" or "IEEPA Duties") on goods imported from nearly every foreign country, including many countries from which Plaintiff sources its imports.

3. Plaintiff is the importer of record of merchandise subject to the IEEPA Duties and has paid IEEPA Duties on its imported goods.

4. However, IEEPA does not authorize these tariffs, as held by the Supreme Court in *Learning Resources, Inc. v. Trump, President of the United States,* No. 24-1287 (U.S. 2026) (*affirming V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

5. Through this action, Plaintiff asks the Court to hold that, with respect to goods imported by Plaintiff, the IEEPA Duties collected by Defendants, and the underlying executive orders that directed them, are unlawful.

6. This separate action is necessary to obtain a declaratory judgment and refund, as the Supreme Court's decision does not itself automatically provide refunds to individual importers.

7. Accordingly, for itself, Plaintiff seeks (i) a declaration that the IEEPA Duties are unlawful; (ii) a full refund with interest, as required by law, from Defendants of all IEEPA Duties Plaintiff has paid to the United States.

## PARTIES

8. Plaintiff, Beluga Inc, is an importer of goods for which various IEEPA Duties were paid.

9. Defendant United States Customs and Border Protection ("CBP") is the United States agency that collects IEEPA duties on imports made by Plaintiff.

10. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

11. Defendant United States of America received the disputed Duties and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

12. Defendants are referred to collectively in this complaint as the "Defendants".

## JURISDICTION AND STANDING

13. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i). See *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025), aff'd sub nom; *Learning Resources, Inc., et al. v. Trump, President of the United States,* No. 24-1287 (U.S. Feb. 20, 2026), hereinafter referred to as *"Learning Resources, Inc."*.

14. The Court has the same powers at law and in equity as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

15. Plaintiff has standing to sue in this case as it is the importer of record for the goods imported into the United States that were subject to the unlawful IEEPA tariffs. Consequently, Plaintiff is "adversely affected or aggrieved" by agency action within the meaning of the APA. 5 U.S.C. § 702; 28 U.S.C. § 2631(i).

16. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i). On February 1, 2025, President Trump issued the first Executive Order that resulted in the collection of IEEPA Duties. This Order was published in the Federal Register shortly thereafter. This action is filed within two years of the date that the first (and all consecutive) Orders were issued and published and is also within two years from the date on which Plaintiff first paid IEEPA Duties.

## GENERAL PLEADINGS

**I. The IEEPA Tariff Executive Orders**

17. On February 1, 2025, after declaring that "the influx of illegal aliens and illicit drugs" at the Nation's borders constituted a national emergency, President Trump invoked the IEEPA to issue three executive orders imposing tariffs on imports from Canada, Mexico, and China.[1] These measures, referred to in this Complaint as the "Trafficking Tariff Orders", resulted in CBP assessing additional duties on Plaintiff's entries from China.

18. On April 2, 2025, the President invoked the IEEPA again, this time declaring that "large and persistent U.S. trade deficits and the absence of reciprocity in key trade relationships" also constituted a national emergency. Based on that declaration, he issued Executive Order 14257, 90 Fed. Reg. 15,041 (referred to in this Complaint as the "Reciprocal Tariff Order")[2], establishing a baseline 10% tariff on imports from nearly every country, effective April 5, with additional "individual" tariffs ranging from 11% to as high as 50% to be imposed on 57 countries "shortly thereafter", effective April 9. *Id*.

19. Following the imposition of these measures, the President issued further executive orders adjusting the effective dates, and/or tariff rates in response to perceived retaliation by U.S. trading partners, among other considerations.[3]

---

[1] Exec. Order No. 14194, *Imposing Duties to Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

[2] Exec. Order No. 14257, Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

[3] *See e.g. Exec. Order No. 14259, Amendment to Reciprocal Tariffs and Updated Duties as Applied to*

20. To implement this new tariff structure, CBP revised the Harmonized Tariff Schedule of the United States multiple times, creating new tariff provisions under which all merchandise subject to the challenged duties must be entered. These changes were presented in numerous Cargo Systems Messaging Services issued by CBP.[4]

21. On April 14, 2025, several importers challenged the legality of the President's IEEPA-based tariffs. *See V.O.S. Selections*, No. 25-cv-00066 (Dkt. 2). This Court held that these actions exceeded the President's authority under IEEPA, and the Federal Circuit, sitting *en banc*, affirmed.[5]

22. After the filing of *V.O.S. Selections*, the President had issued additional executive orders invoking IEEPA to impose additional or modify existing tariffs.[6] CBP continued to collect duties imposed by the Challenged Tariff Orders while the *V.O.S. Selections* litigation and related litigation remained pending.

23. On February 20, 2026, the Supreme Court affirmed the Court of Appeals for the Federal Circuit's verdict, holding that IEEPA does not authorize the President to impose tariffs.[7]

24. On February 22, 2026, CBP confirmed that, for goods entered for consumption or withdrawn from warehouse for consumption on or after 12:00 a.m. Eastern Time on February 24,

---

*Low-Value Imports from the People's Republic of China 90 Fed. Reg. 15,509 (Apr. 14, 2025);* Exec. Order No. 14266, Modifying Reciprocal Tariff Rates to Reflect Trading-Partner Retaliation and Alignment (Apr. 9, 2025), 90 Fed. Reg. 15,625 (Apr. 15, 2025).

[4] See e.g. CSMS # 64649265 - *GUIDANCE – Reciprocal Tariffs, April 5, 2025 Effective Date*; CSMS # 64687696 - *UPDATED GUIDANCE – Reciprocal Tariffs on Goods of China, April 9, 2025, Effective Date*; CSMS # 64701128 - *UPDATED GUIDANCE – Reciprocal Tariffs – Increase in Rate for China and Reversion of Other Country-Specific Rates, Effective April 10, 2025*

[5] *See V.O.S. Selection Inc. v Trump*, 149 F. 4th 1312 (Fed Cir. 2025).

[6] *See e.g.* Executive Order 14323 of July 30, 2025 (*Addressing Threats to the United States by the Government of Brazil*); Executive Order 14325 of July 31, 2025 (*Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*); Executive Order 14329 of August 6, 2025 (*Addressing Threats to the United States by the Government of the Russian Federation*) of August 6, 2025).

[7] *Learning Resources, Inc. v. Trump*, No. 24-1287 (U.S. 2026).

2026, it would cease collecting all tariffs imposed under the International Emergency Economic Powers Act (IEEPA).[8]

25. By this complaint, Plaintiff challenges those orders (the "IEEPA Tariff Orders") that have affected the duty rates on goods imported from the countries with which Plaintiff does business and for which Plaintiff paid duties (thus causing Plaintiff injury), and which the Supreme Court has held to be unlawful.

## II.   CBP's Implementation of the IEEPA Tariff Orders

26. CBP is charged with the assessment and collection of duties. 19 U.S.C. §§ 1500, 1502.

27. CBP is also responsible for assessing and collecting any tariffs, including the IEEPA Duties, on the imported goods based upon the origin of the goods and the tariff classification thereof, in accordance with the rates established by the Harmonized Tariff Schedule of the United States ("HTSUS"). 19 U.S.C. §§ 1202, 1500, 1502.

28. Ordinarily, within 314 days of entry, CBP "finalizes" the appraisement of the entered merchandise, and confirms the value, classification, and duty rate applicable thereto. *See* 19 U.S.C. § 1500 and 19 U.S.C. § 1504.

29. Once the final amount of duty owed on an entry is determined, CBP "liquidates" the entry and notifies the importer of record as to whether the importer owes more money or is entitled to a refund.

---

[8] *See CSMS # 67834313 - Ending Collection of International Emergency Economic Powers Act Duties.*

30. Once liquidation has occurred, the importer of record has 180 days after liquidation to file a protest contesting the liquidation and any other CBP decisions covered thereby. *See* 19 U.S.C. § 1514(a).

31. However, this Court and the Federal Circuit have cautioned that, in certain circumstances, an importer may lack the legal right to recover refunds of duties for entries that have liquidated, even where the underlying legality of a duty or tariff is later found to be unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66 (Ct. Int'l Trade 2021); *Target Corp. v. United States,* 134 F. 4th 1307, 1316 (Fed. Cir. 2025).

32. In *AGS Co. Automotive Sol. v. U.S. Customs and Border Protection, et. al*., No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025) ("AGS"), a three-judge panel of this Court confirmed the authority of this Court to reliquidate entries subject to the IEEPA duties. Id. In a related action, the government has represented that it "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection, et. al*., No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025).

**III. IEEPA Does Not Authorize Assessment of the Subject Duties**

33. The IEEPA Tariff Orders reference IEEPA, 50 U.S.C. § 1701 et seq., the National Emergencies Act, 50 U.S.C. § 1601 et seq., section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

34. Defendants have relied solely on the IEEPA statute to impose and collect the challenged Duties.

35. However, on May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections,* holding that IEEPA did not authorize assessment of IEEPA Duties. This Court permanently enjoined the government from enforcing the IEEPA Duties at issue in that case.

36. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA Duties are unlawful. *See V.O.S. Selections, Inc. v Trump,* 149 F. 4th 1312 (Fed Cir. 2025).

37. Separately, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Re*sources *Inc. v. Trump,* 784 F. Supp. 3d 209 (D.D.C. 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources, Inc.*.

38. The cases were consolidated, with argument before the Supreme Court on November 5, 2025.

39. On February 20, 2026, the Supreme Court affirmed the decision of the U.S. Court of Appeals for the Federal Circuit, holding that IEEPA does not grant the President authority to impose tariffs.[9]

## IV.  Plaintiff Paid Preliminary IEEPA Duties

40. Plaintiff has paid IEEPA duties as imposed by the challenged Tariff Orders.

---

[9] *Learning Resources, Inc. v. Trump*, No. 24-1287 (U.S. 2026).

41. Plaintiff's imported merchandise that was subject to IEEPA duties was entered into the United States under the newly created Chapter 99, HTSUS tariff provisions, which were used to reflect the assessment of those duties.

42. The entries covered by these duties are expected to begin liquidating on and after December 15, 2025.

## STATEMENT OF CLAIMS

## COUNT I

### THE CHALLENGED TARIFF ORDERS ARE *ULTRA VIRES* UNDER V.O.S. SELECTIONS

43. Plaintiff incorporates paragraphs 1- 42 above by reference.

44. The Supreme Court in *Learning Resources, Inc.* Affirmed the Federal Circuit's conclusion that IEEPA's grant of authority to "regulate . . . importation" did not authorize the challenged tariffs, and that neither the text of IEEPA nor its legislative history contains any clear delegation to the President to set tariff rates.

45. The challenged IEEPA Tariff Orders are therefore unlawful, void *ab initio,* and without effect as applied to Plaintiff.

46. Plaintiff respectfully requests that this Court apply the binding decision of the Supreme Court, declare the IEEPA Tariff Orders unlawful as to Plaintiff, enjoin Defendants from enforcing them as to Plaintiff, and order refund of all IEEPA Duties, with interest, collected from Plaintiff, as provided by law.

## PRAYER FOR RELIEF

WHEREFOR, Plaintiff respectfully requests that the Court:

a) Declare that, consistent with the Supreme Court's decision in *Learning Resources Inc.*, the President lacks authority under IEEPA to impose the challenged tariffs;

b) Hold that the IEEPA Tariff Orders are *ultra vires* and void *ab initio* with respect to Plaintiff;

c) Hold that, with respect to Plaintiff, Defendants lack authority to implement and collect any tariffs set out in the HTSUS that are based on the IEEPA Tariff Orders;

d) Order the United States to refund to Plaintiff the IEEPA duties collected on those entries, with interest as provided by law; and

e) award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action;

f) grant such further relief as this Court deems proper.

Respectfully submitted,

SHARRETTS, PALEY, CARTER & BLAUVELT, P.C.

Attorneys for plaintiff

10

75 Broad Street

New York, New York   10004

Telephone (212) 425-0055



By:    /s/ Allison M. Baron   

Allison M. Baron

Dated:  February 26, 2026

**CERTIFICATE OF SERVICE**

I, Allison M. Baron, attorney for plaintiff, hereby certify that on February 26, 2026, I caused a copy of the foregoing document and, related summons, to be served upon the following counsel by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

/s/  Allison M. Baron
Allison M. Baron, Esq.
SHARRETTS, PALEY, CARTER
& BLAUVELT, P.C.
75 Broad Street
New York, NY  10004
Tel. No.: (212) 425-0055